UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER COATS,

    Plaintiff,

v.                                CAUSE NO. 3:19-CV-683 DRL

JOHN SALYER and CAPTAIN SMILEY,

    Defendants.

OPINION AND ORDER

Christopher Coats, a prisoner without a lawyer, is proceeding in this case on an Eighth Amendment claim "against Unit Team Manager Salyer and Captain Smiley for allegedly subjecting him to unconstitutional conditions of confinement by allowing him to remain in a cell with a malfunctioning faucet from May 24, 2019 to [June][1] 25, 2019[.]" ECF 5 at 3.[2] The defendants filed a motion for summary judgment. ECF 50. Mr. Coats filed a response, and the defendants filed a reply. ECF 57, 58. Mr. Coats then filed a surreply, which the defendants moved to strike. ECF 59, 61. The summary judgment motion is now ripe for ruling.

---

[1] The screening order erroneously lists "July 25, 2019" instead of "June 25, 2019." Mr. Coats asserted in his complaint the defendants subjected him to unconstitutional conditions of confinement by allowing him to remain in a cell with a malfunctioning faucet "[f]rom May 24, 2019-June 25, 2019." ECF 3 at 3.

[2] Mr. Coats was also proceeding on a deliberate indifference claim against Dr. Pearcy for refusing to provide him medical treatment for a tooth abscess and throat pain, but this claim was dismissed for failure to exhaust administrative remedies. ECF 5 at 3; ECF 40.

FACTS

On May 24, 2019, Mr. Coats was moved to a cell in the Westville Control Unit (WCU) with a faucet that produced hot, brown water. ECF 57 at 2. Mr. Coats informed staff about the problem and asked to be moved to another cell, and an officer told him a work order would be put in to fix his faucet. *Id.* On June 7, 2019, Mr. Coats submitted a health care request asserting he was experiencing throat pain because he had been forced to drink "hot, brown, rust-looking" water from the faucet in his cell. ECF 57-1 at 8. Mr. Coats asserted he had "no cold water at all" and was able to drink the water when it came out clear by gargling it with salt. *Id.* The health care staff responded "Captain notified – work order was put in." *Id.*

On June 11, 2019, Mr. Coats submitted another health care request asserting the water in his cell was causing him to develop an abscess in his mouth and making it hard for him to swallow. *Id.* at 9. That same day, Mr. Coats submitted a formal grievance regarding the issues with his faucet. ECF 3-1 at 5. Later that day, Captain Smiley placed a work order indicating Mr. Coats' cell "does not have cold water." ECF 52-1 at 2; ECF 52-2. A maintenance worker was assigned the work order and went to Mr. Coats' cell later that day to investigate the complaint. ECF 52-1 at 2. The maintenance worker could not recall "the specific response" to the work order, but he closed it later that day because "[a]ll necessary repairs were made or the complaint was unsubstantiated." *Id.* Mr. Coats agrees that the maintenance worker fixed the cold water in his cell on June 11, 2019. ECF 57 at 2-3.

ANALYSIS

Under the Eighth Amendment, prison officials "must provide humane conditions of confinement . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). In evaluating a conditions-of-confinement claim, the court conducts an objective and subjective inquiry. *Id.* at 834. The objective inquiry asks whether "the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quotation marks, brackets, and citation omitted). "An objectively sufficiently serious risk is one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (quotation marks and citations omitted).

Inmates are entitled to be provided with adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). However, "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and inmates cannot expect the "amenities, conveniences, and services of a good hotel," *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *accord Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012) ("Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment").

3

The defendants argue they are entitled to summary judgment because "the condition of [Mr. Coats'] water was not objectively, sufficiently serious." ECF 51 at 9-10. Mr. Coats responds the condition of his water was objectively serious because drinking the water made his mouth hurt and caused his face to swell. ECF 57 at 2; ECF 57-1 at 1-2.

At the outset, before the court can determine whether the condition of Mr. Coats' water was objectively serious, it is helpful to determine the duration of the condition. Specifically, Mr. Coats was granted leave to proceed on a claim that the defendants violated his Eighth Amendment rights by "allowing him to remain in a cell with a malfunctioning faucet from May 24, 2019 to [June] 25, 2019[.]" *See* ECF 5 at 3. However, it is undisputed Captain Smiley put in a work order for Mr. Coats' faucet on June 11, 2019, and that Mr. Coats' cold water was fixed later that day. *See* ECF 52-2; ECF 57 at 2-3 ("The Plaintiff will be in agreement that on June 11, 2019 maintenance did fix the cold water in cell D2/204"). Thus, the question before the court is whether the defendants denied Mr. Coats the minimal civilized measure of life's necessities by allowing him to remain in a cell with a malfunctioning faucet for eighteen days between May 24, 2019, and June 11, 2019.

Here, no reasonable jury could conclude the defendants violated Mr. Coats' Eighth Amendment rights by keeping him in a cell with a malfunctioning faucet for eighteen days, as there is no evidence the water from Mr. Coats' faucet created an excessive risk to his health and safety. Specifically, Mr. Coats argues the faucet in his cell emitted hot water that was brown and "tasted like rust." ECF 57 at 2. However, the temperature of Mr. Coats' water did not violate his Eighth Amendment rights, as Mr. Coats provides no

4

evidence the water's temperature rendered it unsanitary or undrinkable.[3] Moreover, there is no evidence the color or taste of Mr. Coats' water created an excessive risk to his health. Specifically, Mr. Coats asserted in his June 7 grievance that his water was brown at times, but he was able to drink it when it came out clear. Further, to the extent Mr. Coats drank the brown water, he offers no evidence that drinking this water led to any health issues.[4] Mr. Coats argues he developed an abscess in his mouth and had to get his wisdom tooth pulled, but he provides no evidence linking these conditions to the water from his faucet. In short, though Mr. Coats may have felt uncomfortable drinking the water from his faucet, he offers no evidence drinking this water for eighteen days, at least during those times when it wasn't clear, posed an excessive risk to his health and safety. *See Rhodes*, 452 U.S. at 349 (noting the Constitution does not mandate comfortable prisons). Thus, based on the record before this court, no reasonable jury could conclude the defendants denied Mr. Coats the minimal civilized measure of life's necessities.

Second, the defendants argue that, even if the condition of Mr. Coats' water was objectively serious, there is no evidence they acted with deliberate indifference to the condition. ECF 51 at 10-11. Mr. Coats responds the defendants were deliberately

---

[3] In his surreply, Mr. Coats describes the water from his faucet as "warm." *See* ECF 59 at 2.

[4] The court notes that, while an overabundance of iron in drinking water can give the water a reddish-brown color and a disagreeable metallic taste, iron is considered an "aesthetic" contaminant which is not hazardous to health. *See* Illinois Department of Public Health, http://www.idph.state.il.us/envhealth/factsheets/ironFS.htm; Wisconsin Department of National Resources, https://dnr.wi.gov/files/pdf/pubs/dg/dg0035.pdf (last visited Nov. 1, 2021).

indifferent because they could have moved him to a different cell until his faucet was repaired. ECF 57 at 2.

"[I]n covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Thomas*, 2 F.4th at 720. Specifically, the plaintiff must establish that each defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted). The court examines the personal involvement of each prison official in this analysis of the Eighth Amendment claim. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

Regarding Unit Team Manager Salyer, he attests he has "no recollection of discussing a malfunctioning faucet with Mr. Coats" between May 24, 2019, and June 25, 2019. ECF 52-3 at 2. In response, Mr. Coats provides no evidence Unit Team Manager Salyer was ever notified of the issue with his faucet, other than a conclusory assertion that "[t]he Defendant's knew about the problem with the cold water not working[.]" *See* ECF 57 at 4. Thus, because there is no evidence Unit Team Manager Salyer had notice of the issue with Mr. Coats' faucet, no reasonable jury could conclude he was deliberately indifferent to the condition. *See Thomas*, 2 F.4th at 720 ("to prove a violation of the Eighth Amendment, a prisoner must go beyond allegations and produce evidence . . . that officials were subjectively aware of [the inhumane] conditions and refused to take steps

to correct them"); *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations"); *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough") (quotation marks, brackets, and citation omitted).

Regarding Captain Smiley, the defendants argue he first learned of the issue with Mr. Coats' faucet on June 7, 2019, when Mr. Coats submitted a health care request asserting the faucet in his cell had "no cold water." ECF 51 at 9; ECF 57-1 at 8. Because Mr. Coats offers no evidence disputing this fact, the court accepts as undisputed that Captain Smiley first had notice of the issue with Mr. Coats' faucet on June 7, 2019. It is also undisputed that Captain Smiley put in a work order for Mr. Coats' faucet on June 11, 2019, and that Mr. Coats' cold water was fixed later that day. It is unclear why it took Captain Smiley until June 11 to enter the work order and resolve the issue with Mr. Coats' faucet. However, this five-day gap was not unreasonable based on the information known to Captain Smiley at that time. *See Farmer*, 511 U.S. at 844 (explaining that prison officials "may be found free from liability if they responded reasonably to the risk"). Specifically, Mr. Coats' June 7 health care request stated only that the water from his faucet was "hot" and was sometimes "brown" and "rust-looking," but that he was able to drink the water when it came out clear. *See* ECF 57-1 at 8. Based on this information, there is no evidence Captain Smiley knew Mr. Coats' malfunctioning faucet posed an

7

excessive risk to his health and safety. *See Daugherty v. Page*, 906 F.3d 606, 611–12 (7th Cir. 2018) (holding no reasonable jury can find the defendants acted with deliberate indifference where "there is no evidence that either of them was specifically aware of the particular conditions forming the basis of [the plaintiff's] Eighth Amendment claim"). By the time Captain Smiley could have received Mr. Coats' other grievances and health care requests elaborating on the condition of his water and the related health risks, Mr. Coats' faucet already had been repaired. Thus, based on the record before this court, no reasonable jury could conclude Captain Smiley disregarded an excessive risk of harm to Mr. Coats by waiting until June 11 to put in a work order to repair Mr. Coats' faucet.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 50);

(2) DENIES AS MOOT the defendants' motion to strike Mr. Coats' surreply (ECF 61); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and to close this case.

SO ORDERED.

November 3, 2021 *s/ Damon R. Leichty*
Judge, United States District Court